UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAITH SIDLOW, aka FAITH SIDLOW-SOARES, and RICHARD NITIDO,<br><br>Plaintiffs,<br><br>v.<br><br>NEXSTAR BROADCASTING, INC.,<br><br>Defendant. | No. 1:14-cv-00657-DAD-SAB<br><br><u>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, DENYING MOTION TO DEFER CONSIDERATION OF MOTION, AND DIRECTING CLERK OF COURT TO CLOSE CASE</u><br><br>(Doc. Nos. 64, 66) |

In this matter each of the two plaintiffs brings two causes of action for age discrimination under the California Fair Employment and Housing Act ("FEHA")—one for disparate impact and one for disparate treatment—as a result of a reduction in force ("RIF") which occurred after defendant Nexstar Broadcasting, Inc. acquired two television stations in Fresno. (Doc. No. 1-1 at 7–8.) The case was originally filed in Fresno County Superior Court on April 1, 2014, and removed here on diversity jurisdiction. (Doc. No. 1-1 at 1–2.)

On December 18, 2015, defendant filed a motion seeking summary judgment in its favor on all claims, asserting plaintiffs could not present sufficient evidence of either disparate impact or disparate treatment to allow the matter to proceed to trial. (Doc. No. 64.) On January 13, 2016, plaintiffs filed a motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure seeking to continue the motion for summary judgment to the extent it concerned plaintiffs'

disparate impact claims.  (Doc. No. 66.)  On January 15, 2016, plaintiffs filed an opposition to the motion for summary judgment.  (Doc. No. 68.)  Defendant replied on January 21, 2016.  (Doc. No. 70.)  On January 22, 2016, the then-assigned District Judge took the motion for summary judgment under submission without oral argument.  (Doc. No. 72.)  Thereafter, on February 11, 2016, defendant filed an opposition to plaintiffs' Rule 56(d) motion.  (Doc. No. 76.)  Plaintiffs replied to that opposition on February 17, 2016.  (Doc. No. 77.)  The case was then reassigned to the undersigned on February 29, 2016 with these motions pending.  (Doc. No. 79.)  The undersigned re-set the motions for hearing and argument was heard on May 17, 2016, with attorney Shelley G. Bryant appearing on behalf of plaintiffs and attorney Angelito Sevilla appearing on behalf of defendant.  (Doc. No. 82.)

## I.     Applicable Legal Standards

### *a.     Summary Judgment Standard*

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case."  *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.).  *See also* Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

While a plaintiff generally has an initial burden of establishing a *prima facie* case of intentional discrimination, when an employer moves for summary judgment on a disparate treatment claim in a FEHA case, "'the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden.'" *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 224 (1999)). *See also Jackson v. Kaplan Higher Education*, LLC, 106 F. Supp. 3d 1118, 1123 (E.D. Cal. 2015); *Gunther v. Xerox Corp.*, Case No. 13-cv-04596-HSG, 2015 WL 5769619, at *7 (N.D. Cal. Oct. 2, 2015) (assessing plaintiff's prima facie showing in light of this standard).

1 Therefore, "[t]o prevail on summary judgment, [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Lucent Techs., Inc.*, 642 F.3d at 745 (quotations omitted).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa County Transit Authority*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

    b.  Rule 56(d) Standard

Under Rule 56(d), the court must deny or continue a motion for summary judgment if an opposing party can show that "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Indeed, Rule 56(d) "require[es], rather than merely permit[s], discovery where the nonmoving party has not had the opportunity to discover information that is essential to its opposition." *Metabolife Int'l Inc. v. Wornick*, 264 F.3d 832, 849 (9th Cir. 2001). The opposing party "must identify the specific facts that further discovery would reveal and explain why these facts would preclude summary judgment." *Tatum v. City & Cty. of San*

*Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). In order to be entitled to relief under Rule 56(d), however, plaintiffs here "must show (1) that [they] ha[ve] set forth in affidavit form the specific facts that [they] hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). *See also Blough v. Holland Realty, Inc.,* 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) (noting that to obtain a continuance under 56(d) a party must make a timely application, specifically identifying the relevant information and some basis for the belief that the information sought actually exists); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996) ("The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists.") In addition, the movant must also establish their diligence in previously pursuing the discovery that they now assert is necessary. *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for the denial of a Rule 56[d] motion."). "District courts have wide latitude in controlling discovery, and decisions not to permit further discovery in response to motions made pursuant to Federal Rule of Civil Procedure 56[d] are reviewed for abuse of discretion." *United States v. Johnson Controls, Inc.* 457 F.3d 1009, 1023 (9th Cir. 2006) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002)). *See also Swoger v. Rare Coins Wholesalers*, 803 F.3d 1045, 1047 (9th Cir. 2015).

**II.    Analysis**

Plaintiffs submit virtually no opposition to defendant's motion for summary judgment on their disparate impact claims, instead standing solely on their Rule 56(d) motion.[1] Because of this, the court will first turn to consideration of plaintiffs' Rule 56(d) motion, and then to the summary judgment motion itself.

/////

/////

---

[1] Plaintiffs' counsel stated at the hearing on the pending motions that plaintiffs required no further discovery with respect to their disparate treatment claims. The evidence with respect to those claims is therefore before the court on summary judgment.

5

       *a.*       *Plaintiffs are Not Entitled to Relief Under Rule 56(d)*

Plaintiffs filed their motion to continue the summary judgment proceedings under Rule 56(d) on January 13, 2016. (Doc. No. 66.) Therein, they seek "the contents of the RIF folder on the server." (Doc. No. 66 at 7.) To understand what this specific request means requires a brief review of the proceedings relating to discovery in this case.

Plaintiffs have been seeking information related to RIFs conducted by the defendant around the country since early on in this case. On May 6, 2015, plaintiffs first filed a motion to compel responses to interrogatories seeking nationwide information about all of the defendant's RIFs in the last five years. (Doc. No. 40.) On June 11, 2015, the assigned magistrate judge partially ruled in favor of plaintiffs, ordering defendant to "provide the RIF plans for the other stations at which a RIF was conducted from 2011 to the present." (Doc. No. 47 at 6.) On July 29, 2015, the parties filed with the court a joint statement concerning yet another discovery dispute, noting that the RIF plans defendants had produced in accordance with the magistrate judge's June 11 order did not include names, positions, and ages of the employees involved in the RIFs, which plaintiffs argued was necessary information. (Doc. No. 53 at 5.) Plaintiffs sought this additional information by way of another motion to compel as well as a continuance of the discovery cut-off date. (Doc. No. 53 at 5.)

On July 31, 2015, the magistrate judge again partially granted plaintiffs' motion to compel and in doing so ruled: "Defendants shall be ordered to produce in electronic format, for each RIF conducted between 2011 and the present, the name, job title, and date of birth of employees that were laid off." (Doc. No. 54 at 6.) In that same order, however, the magistrate judge noted he could not amend the pretrial scheduling order which controlled the deadline for conducting discovery in the action because that order had been issued by the then-assigned District Judge. (Doc. No. 54 at 7–8.) The magistrate judge therefore denied plaintiff's request for an extension of the discovery cutoff date without prejudice to plaintiffs submitting their request to the then-assigned District Judge. (Doc. No. 54 at 8.)

Under the court's pretrial scheduling order, discovery in this action closed on August 17, 2015 (Doc. No. 35 at 2), two-and-one-half weeks after the magistrate judge's July 31 order. The

scheduling order, which required all discovery be completed by the August 17 date, specifically defined "completed" as discovery having "been conducted so that all depositions have been taken and any disputes relative to discovery shall have been resolved by appropriate order if necessary and, where discovery has been ordered, the order has been obeyed." (Doc. No. 35 at 2.) Nonetheless, plaintiffs never filed a motion requesting that the assigned District Judge amend the scheduling order in this case. Rather, they let the discovery deadline pass and waited until defendants moved for summary judgment to submit their Rule 56(d) motion seeking additional discovery which is now pending before the court.

Approximately a month after discovery closed, on September 21, 2015, plaintiffs belatedly filed another motion to compel alleging the documents produced by defendant in response to the magistrate judge's July 31, 2015 order were insufficient because "the list produced by Nexstar did not include information about all of the employees involved in the RIFs, only those laid off." (Doc. No. 55 at 2.) Plaintiffs requested production of a complete copy of defendant's "RIF folder," which purportedly contains lists including the names, positions, and ages of each individual *considered* for layoff in each RIF, as well as which individuals were ultimately laid off. (Doc. No. 59 at 6–7.) On October 26, 2015, the magistrate judge properly denied the motion as untimely, noting "[p]laintiffs were informed by this Court in the July 31, 2015 order that any motion to extend the discovery deadline must be raised before [the District Judge" and that "[p]laintiffs had more than two weeks from the issuance of the July 31, 2015 order to bring a motion to extend discovery in this action," and did not do so. (Doc. No. 62 at 4.)

As noted, defendant filed their motion for summary judgment on December 18, 2015. (Doc. No. 64.) Plaintiffs filed their Rule 56(d) motion on January 13, 2016, almost six months after the close of discovery under the court's pretrial scheduling order. (Doc. No. 64.) Moreover, plaintiffs' counsel did not submit an affidavit or declaration in conjunction with the Rule 56(d) request, as required. *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows *by affidavit or declaration* . . .") (emphasis added). Instead, counsel submitted a declaration in support of plaintiff's opposition to defendant's motion for summary judgment in which he discussed the discovery
/////

7

dispute over the RIF folder.  (*See* Doc. No. 68-3 at ¶¶ 23–31.)[2]  Counsel's declaration states that the assigned magistrate judge "ordered Nexstar to produce the list of those employees laid off during the RIFs, and did not mention the contents of the RIF folder on the server." (Doc. No. 68-3 at ¶ 26.)  According to plaintiffs' counsel, he "served another set of requests for production of the RIF folder contents in anticipation that Nexstar would claim the documents had not been previously requested" but on the last day of discovery defendant responded to the request by refusing to produce the documents. (Doc. No. 68-3 at ¶¶ 27-28.)  Plaintiffs' counsel asserts his expert witness requires all the information sought in order to form his opinion and that this information is also necessary to prove plaintiffs' case, because it will at least show decisions were made at a corporate level, rather than a local level. (Doc. No. 68-3 at ¶¶ 29–30.)

While perhaps unfortunate, plaintiffs are in a bind of their own making.  While they clearly want the discovery they now seek, plaintiffs have failed to abide by the court's pretrial scheduling order.  What is before the court is a very belated motion—filed almost six months after the close of discovery—to amend the scheduling order and reopen discovery in this action.  A continuance under Rule 56(d) is required only "where the nonmoving party has not had the opportunity to discover information that is essential to its opposition." *Metabolife*, 264 F.3d at 846 (*quoting Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n. 5 (1986)).  This case was removed to federal court on May 2, 2014 and under the court's scheduling order discovery, except as to experts, closed on August 17, 2015. (Doc. Nos. 1, 35.)  During that time, plaintiffs engaged in meaningful discovery.  They were provided an opportunity to discover the information they now seek, but delayed in doing so, even ignoring the magistrate judge's warnings about the impending discovery deadline and the proper procedure by which to request a modification of the pretrial scheduling order.  The court will not reopen discovery at this late date simply based on the failure to timely request a modification to the court's scheduling order.

Further, in order to receive relief under Rule 56(d), plaintiffs must show "(1) . . . the specific facts that [they hope] to elicit from further discovery, (2) that the facts sought exist, and

---

[2] The court will consider this declaration to be plaintiffs' attempt to satisfy Rule 56(d)'s requirements and will consider it as such.

(3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Campbell*, 138 F.3d at 779. *See also Blough*, 574 F.3d at 1091 n.5; *Nidds*, 113 F.3d at 921. Here, counsel's declaration does not identify these required facts. Rather, plaintiffs seek additional categories of discovery, such as production of "the documents in server folder named 'RIF Docs' (email, information from general managers, and severance agreements with attachments)." (Doc. No. 68-14 at 3. *See also* Doc. No. 68-3 at ¶¶ 28–30.) Presumably, plaintiffs hope this additional discovery would *contain* facts demonstrating an age-based disparate impact on a nationwide basis across defendant's RIFs, and would further demonstrate there was some national policy to which this disparate impact could be tied. However, counsel's declaration does not identify even these general "facts," let alone any specific ones essential to resist the pending summary judgment motion.[3]

In short, while the material plaintiffs seek might have been the proper object of timely discovery, counsel's declaration lacks sufficient specificity to justify the court's delaying consideration of defendant's motion for summary judgment and the re-opening of the long-closed discovery period in this case.

To the extent plaintiffs have suggested in their papers and at the hearing on the pending motion that defendant failed to comply with discovery orders or otherwise demonstrated bad faith in connection with the discovery phase of this litigation, the record demonstrates otherwise. The magistrate judge ordered defendant "to produce in electronic format, for each RIF conducted between 2011 and the present, the name, job title, and date of birth of employees *that were laid off*." (Doc. No. 54 at 6) (emphasis added). Plaintiffs' September 21, 2015 motion to compel sought additional discovery because "the list produced by Nexstar did not include information about *all of the employees involved* in the RIFs, *only those laid off*." (Doc. No. 55 at 2 (emphasis added).) Clearly, defendant produced what it was ordered to: a list of employees who were laid

---

[3] Of course, the discovery plaintiffs seek could also demonstrate that there either was no disparate impact on older employees when analyzed on a nationwide basis, or no national policy to which any disparate impact could be tied. *See Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) ("[T]he employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.") (internal quotations and citations omitted).

off. The fact that plaintiffs thereafter decided that they needed more information than that ordered produced in order to prove their case, combined with the fact that discovery was proceeding incrementally on this basis, may have provided good reason for plaintiffs to seek amendment of the court's scheduling order at that time. Plaintiffs cannot, however, complain of defendant's actual *compliance* with a court discovery order in attempting to excuse their own failure to seek such an amendment.

In short, there is no valid excuse for plaintiffs' failure to request a modification of the court's scheduling order, particularly after having been prompted by the magistrate judge to do so. Plaintiffs had a full and fair opportunity to conduct discovery in this case. Accordingly, the court will not reopen discovery at this late date nor will it defer consideration of the defendant's pending motion for summary judgment.

      *b.*      *Defendant is Entitled to Summary Judgment on the Disparate Impact Claims*

A plaintiff has the initial burden of making out a *prima facie* case of disparate impact and must do so by showing 1) "the occurrence of certain outwardly neutral employment practices," and 2) "a significantly adverse or disproportionate impact on persons of a particular [age] produced by the employer's facially neutral acts or practices." *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 749 (9th Cir. 2003) (internal quotations omitted). *See also Katz v. Regents of the Univ. of Cal.*, 229 F.3d 831, 835 (9th Cir. 2000) ("We apply the same analytical framework to claims brought under FEHA."). Here, on summary judgment, there is a complete dearth of evidence from plaintiffs demonstrating any disparate impact on older employees. *See Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990) (noting one aspect of plaintiff's burden is to demonstrate a disparate impact); *see also Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 868 (9th Cir. 1996) ("To avoid summary judgment . . . , a plaintiff must first produce evidence supporting a prima facie case of employment discrimination.") Indeed, plaintiffs have come forward with no evidence of a disparate impact in opposition to defendant's motion for summary judgment, but instead merely argue defendant failed to produce necessary discovery on the issue. (Doc. No. 68 at 15–16.) That contention has been rejected by the court for the reasons set forth above. Given this, coupled with the testimony of defendant's expert

presented in support of the pending motion that there was no disparate impact on older employees in the Fresno RIF at issue (Doc. No. 64-12), the court concludes that, based on the undisputed evidence, defendant is entitled to summary judgment in its favor on the disparate impact claims brought by each of the plaintiffs.

        *c.*      *Defendant is Entitled to Summary Judgment on the Disparate Treatment Claims*

"'Disparate treatment' is intentional discrimination on prohibited grounds." *DeJung v. Superior Court of Sonoma Cty.*, 169 Cal. App. 4th 533, 549 n. 10 (2008). The FEHA, under which plaintiffs' claims are brought, prohibits discrimination in the workplace based on an employee's age. Cal. Gov't Code § 12940(a). Under this provision, age means the chronological age of any individual who is at least forty years old. Cal. Gov't Code § 12926(b). In order to demonstrate a *prima facie* case of age discrimination in the employment context under FEHA, a plaintiff must show:

> (1) he [or she] was a member of a protected class, (2) he [or she] was qualified for the position he [or she] sought or was performing competently in the position he [or she] held, (3) he [or she] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.

*Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354–55 (2000) (adopting the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) for trial). "While the plaintiff's *prima facie* burden is not onerous, he [or she] must at least show actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a prohibited discriminatory criterion." *Guz*, 24 Cal. 4th at 355 (internal quotations and citations omitted). If a plaintiff sets out a *prima facie* case, "a presumption of discrimination arises" which, while rebuttable, is "legally mandatory," meaning an absence of explanation by defendant would result in a directed verdict for plaintiff. *See id.* When a prima facie case is made, the burden therefore shifts to the employer to rebut the presumption by showing through admissible evidence its actions were taken for legitimate, nondiscriminatory reasons. *Id.* at 355–56. If defendant does this, "the presumption of discrimination disappears." *Id.* at 356. Then, the plaintiff must "attack the employer's proffered

11

reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Id.* "The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff" throughout. *Id.*

California courts have noted the *McDonnell Douglas* test was "originally developed for use at trial, not in summary judgment proceedings," and therefore the burden is reversed in these cases with the defendant moving for summary judgment being required "to negate the plaintiff's right to prevail on a particular issue." *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 309 (2010) (quoting *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 343–44 (2008)). Therefore, the defendant here may prevail by showing either that plaintiffs cannot establish one of the elements necessary to prove their disparate treatment claim or that there was a legitimate, nondiscriminatory reason for the defendant's decision to terminate plaintiff's employment. *See Lucent Techs., Inc.*, 642 F.3d at 745 (quoting Avila, 165 Cal. App. 4th at 1247).

Here, on summary judgment defendant has demonstrated plaintiff Sidlow cannot establish any circumstances suggesting a discriminatory motive, a necessary element of her *prima facie* case. There is simply no colorable evidence before the court suggesting a discriminatory motive in the termination of defendant Sidlow. Plaintiffs point to evidence that the reason Sidlow was laid off changed from her "unsuitability" to her over-compensation for part-time work. (Doc. No. 68 at 18.) Plaintiffs contend "unsuitability" means the employee is not suitable for on-air broadcast, per corporate policy, whereas Matt Rosenfeld, the general manager in charge of laying off employees to meet corporate financial goals,[4] testified he believed that term simply indicated

---

[4] Plaintiffs suggest there is a genuine dispute of fact as to who made the decisions about which employees would be laid off. (*See* Doc. No. 68-2 at 3.) The only evidence before the court, however, shows that Rosenfeld made these decisions. (*Id.*) Plaintiffs' evidence showing anyone above Rosenfeld was involved in the RIF process suggests at best that in some general manner a Nexstar executive named Brian Jones was involved, only to the extent that Jones ordered Rosenfeld to cut operating costs, which triggered the RIF. However, Jones and Rosenfeld both testified at their depositions that, while at some level corporate approval of the layoffs was required, Rosenfeld was in charge of and did make the decisions regarding who would be laid off. (Doc. Nos. 64-9 at 5 & 64-11 at 7-14, 23, 33.) Therefore, the evidence before the court on summary judgment establishes that the relevant decision-maker with respect to any disparate treatment claims is Rosenfeld. There is no evidence before the court suggesting that anyone above Rosenfeld directed him to cut any specific employees or positions.

1   that Sidlow was part-time and highly compensated, thereby making her "unsuitable" for
2   continued employment. (Doc. No. 68 at 18.) The evidence before the court on summary
3   judgment makes clear that Rosenfeld's reason for selecting Sidlow to be laid off in fact *did not*
4   *change*, but rather remained from beginning to end that he believed Sidlow was highly
5   compensated and only worked part-time, thereby making it reasonable to lay her off. Even
6   crediting all the facts asserted in plaintiffs' argument as true, no age-related motive for
7   defendant's termination of plaintiff Sidlow is suggested.
8       Plaintiff Sidlow also argues she offered to return to full-time employment and said she
9   would "consider" taking a pay cut. (Doc. No. 68 at 18–19.) However, this argument fails to
10  suggest age-related discrimination. Accepted as true, the fact management did not accept plaintiff
11  Sidlow's offer to return to full-time employment or inquire further as to whether she was willing
12  to take a pay cut does not indicate any age-based discriminatory animus on the part of
13  management, absent some other evidence suggesting as much.
14      In opposing summary judgment, plaintiff Sidlow argues that it is undisputed that she was
15  replaced "with a much younger employee." (Doc. No. 68 at 19.) The only evidence cited by
16  plaintiff in this regard is the deposition testimony of Rosenfeld that, in late 2012 or early 2013,
17  Carina Corral was hired and served as co-anchor of the morning news program alongside plaintiff
18  Sidlow. (Doc. No. 68-6 at 39–40.) Rosenfeld testified Corral was retained because she was a
19  full-time employee and that he did not know how old she was, but guessed she was around forty
20  years old or slightly younger than forty. (Doc. No. 68-6 at 40–41.) Rosenfeld also noted Corral
21  did not replace Sidlow but rather that George Takata was eventually moved over from sports to
22  fill Sidlow's position. (Doc. No. 68-6 at 40.) Rosenfeld testified he believed Takata was in his
23  "mid forties." (Doc. No. 68-6 at 39.) With respect to plaintiff Sidlow's claim, this evidence at
24  best suggests Sidlow was replaced by Takata, who was over the age of forty at the time of the
25  alleged age discrimination. While it is arguably possible for an employer to discriminate on the
26  basis of age between various employees all over the age of forty, this argument is essentially a
27  *post hoc, ergo propter hoc* fallacy: because the eventual replacement was somewhat younger
28  than plaintiff Sidlow, she therefore must have been discriminated against on the basis of her age.

13

Such evidence is insufficient to sustain a disparate treatment claim. *See Chen v. Cty. of Orange*, 96 Cal. App. 4th 926, 931 (2002) ("Mere sequence is not enough—that would be the classic logical fallacy of 'post hoc ergo propter hoc.'"); *Holtzclaw v. Certainteed Corp.,* 795 F. Supp. 2d 996, 1020–21 (E.D. Cal. 2011).

Plaintiffs also attempt to suggest two other employees—Michelle Phillips Lowen and Mark Aro—were laid off because of their age, thereby making it more likely plaintiffs too were laid off for discriminatory reasons. Lowen and Aro were both over the age of forty at the time they were laid off. Lowen testified she began working as a business manager at KSEE in December 2012, handling accounting and human resources functions. (Doc. No. 68-10 at 6.) She was fifty-four years old when she was hired. (Doc. No. 68-10 at 7.) Lowen learned KSEE would be acquired by defendant in January 2013, and that defendant "hub[bed]" its business center—meaning it centralized human resources functions at the corporate level—which would result in the elimination of her position as the local business manager. (Doc. No. 68-10 at 10.) She testified at her deposition she neither resigned nor was terminated, directly, but that it was inferred to her that her job was being eliminated and she should try to get her old job back. (Doc. No. 68-10 at 8.) Lowen left her employment with defendant in mid-February 2013. (Doc. No. 68-10 at 8.)

Aro testified at deposition that he was never told whether his position would be eliminated, noting "every time we asked any supervisor, it was, I don't even know if I am staying." (Doc. No. 68-9 at 7.) Aro was concerned his job would be eliminated because it would be subsumed by the corporate office. (Doc. No. 68-9 at 7–8.) Aro testified he did not feel pressured by Rosenfeld to resign[5] and that in fact that no one at Nexstar pressured him to resign,

---

[5] Plaintiffs' claims that Aro reported feeling pressured. In fact, what Aro testified to is that, following his departure from Nexstar and during the pendency of this lawsuit, he was contacted by Rosenfeld about writing a letter for use in this lawsuit stating he was not fired. Aro testified at his deposition he felt pressured by Rosenfeld to help with this lawsuit, and agreed to write a letter saying he was not fired. (Doc. No. 68-9 at 27–33.) However, when a document drafted by defense counsel in this case was forwarded to him, Aro felt it was inaccurate for a number of reasons and declined to sign it. He was not subsequently contacted by defense counsel or Rosenfeld after he refused to sign the declaration, and was instead subpoenaed to attend a deposition. (*Id.*)

14

but rather that he just "very much felt that there wasn't going to be a place for me." (Doc. No. 68 at 8–9.) He also noted that he was being paid "far above what they were paying and what they are paying now for someone that does what I do." (Doc. No. 68 at 10.) According to Aro, he did not feel he was treated differently because of his age, but rather because of his pay. (Doc. No. 68 at 10–11, 18.)

While the requirement to establish a *prima facie* case is not an onerous one, *see Hersant v. Dept. of Soc. Servs.*, 57 Cal. App. 4th 997, 1002–03 (1997), plaintiff Sidlow has not met her burden of coming forward with any evidence on summary judgment suggesting a discriminatory intent in the decision to terminate her. The sum total of the evidence offered on summary judgment in support of plaintiff Sidlow's *prima facie* case that her termination was motivated by age based discriminatory animus is that Rosenfeld maintained the same reason for terminating her (though he arguably misunderstood what "unsuitability" meant), that she was replaced as anchor on the morning show by another employee in his mid-forties, and that two other employees left defendant's employment because they believed their positions would be eliminated and not because of an age-related reason. This evidence is wholly insufficient to sustain even a *prima facie* claim of disparate treatment. Accordingly, defendant is entitled to summary judgment in its favor at to plaintiff Sidlow's disparate treatment claim.

Plaintiff Nitido, on the other hand, has presented a *prima facie* case of employment discrimination on summary judgment, and defendant's has not met its burden of refuting that prima facie showing. Nitido was one of two individuals who held the same position at the consolidated television stations, the other being Matthew Damore. According to plaintiff Nitido, Damore had "personnel issues" and was paid a higher salary than Nitido. (Doc. No. 68 at 19.) He was also younger than plaintiff Nitido. (Doc. No. 68 at 19.) In this regard, plaintiff Nitido relies solely on the deposition testimony of Rosenfeld. Rosenfeld testified he believed Damore was in his mid- to late-forties. (Doc. No. 68-6 at 42.) A list attached to Rosenfeld's declaration submitted in support of the pending motion reflects that, in fact, Damore was forty-two and Nitido was fifty-six. (Doc. No. 64-1 at 5.) Moreover, Rosenfeld actually testified at deposition that there were no personnel issues that "had to do with" Damore, and that while Damore dealt

with personnel issues of those employees he was responsible for managing, he was never "written up for or anything like that." (Doc. No. 68-6 at 43.) Rosenfeld did testify he believed Damore's salary was higher than plaintiff Nitido's. (*Id.*) Because a factfinder could infer an age-discriminatory motive from a decision to keep a younger, higher paid employee over an older, lesser paid employee, there is a genuine dispute of material fact over whether plaintiff Nitido could establish a *prima facie* case of disparate treatment. *See Guz*, 24 Cal. 4th at 355. The court therefore turns to whether it has been established that there is a triable issue of fact about whether defendant's proffered reason for selecting Nitido to be laid off—that Damore had more experience in the position of creative services director and had previously served in that position at both KSEE and KGPE—was pretextual. *See Lucent Techs., Inc.*, 642 F.3d at 745

Plaintiff argues that a disputed issue of material fact must be determined by a jury because, while Damore had more time with the title of creative services director, plaintiff Nitido had served the functions and responsibilities of that position for many years at another television station prior to joining KSEE. (Doc. No. 68 at 19.) As evidence of this, Nitido points to his own deposition testimony and that of Aro. In this regard, plaintiff Nitido testified that, prior to his start at KSEE in December 2012, he worked for KFSN-TV. (Doc. No. 68-8 at 7.) His job title at KFSN was promotions manager, pursuant to which Nitido *reported to* the creative services director. (Doc. No. 68-8 at 9–10.) According to Nitido, he worked at KFSN for twenty-seven years, and would "frequently"[6] become the interim creative services director when the station was "in between" directors, because he "knew the job." (Doc. No. 68-8 at 10.) Plaintiff Nitido also testified he was performing the "duties of a creative services director for probably over 10 or 12 years and wanted to have the title to go with it," which was why he sought the position at KSEE. (Doc. No. 68-8 at 11.) Aro testified he worked with both Damore and Nitido "extensively," and "believe[d] Rick Nitido had more experience in" the role of creative services director. (Doc. No. 68-9 at 14.)

/////

---

[6] Defendant asserts Nitido served as the interim creative services director three times. (Doc. No. 68-2 at 35.)

16

Rosenfeld testified Damore had approximately fifteen years of experience as the creative services director. (Doc. No. 64-11 at 17.) Rosenfeld also testified plaintiff Nitido had six months of experience as creative services director, and that he did not "know exactly" how much experience Nitido had in creative services in general. (Doc. No. 64-11 at 18.) According to Rosenfeld, plaintiff Nitido was hired to "be the lead creative services director at KSEE," and though he had experience in creative services prior to that, he did not have experience in the lead position. (Doc. No. 64-11 at 18–19.) Assuming *arguendo* Nitido in fact had more experience in that position than Damore, the undisputed evidence before the court on summary judgment establishes that Rosenfeld was unaware of Nitido's alleged superior knowledge and experience.

Plaintiff Nitido admits he held the title of creative services director for only eight months as opposed to Damore's nine years served in that actual position, but contends that he had done the substantive work of creative services director prior to actually getting that title when he moved to KSEE. Plaintiff Nitido argues that based upon the evidence submitted on summary judgment, a factfinder could draw an inference of age-related animus because Rosenfeld acted *in spite of* knowledge of Nitido's superior qualifications for the position. However, plaintiff has presented no evidence establishing the predicate fact: i.e., that Rosenfeld *had knowledge* of Nitido's superior qualifications. No evidence is before the court suggesting that Rosenfeld was aware Nitido had functionally served as the head of creative services prior to coming to KSEE. Rather, Rosenfeld's deposition testimony establishes that he understood Nitido to have experience in creative services, but not in leading that department. That evidence stands undisputed.

Ultimately, the question of pretext is a question of intent or motive. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.8 (1981) (noting that, in these cases, "the allocation of burdens and the creation of a presumption by the establishment of a *prima facie* case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination"). No inference of intent or motive can be drawn if the decisionmaker was undisputedly unaware of the critical facts which it is alleged he disregarded in selecting plaintiff for discharge. Without any evidence from which a reasonable factfinder could conclude

17

Rosenfeld was aware of Nitido's supposedly superior qualifications, despite the lesser job titles of the positions he held, the court cannot conclude that a reasonable factfinder could draw a reasonable inference of age-related discrimination from the evidence before the court on summary judgment.[7]

Accordingly, defendant is entitled to summary judgment in its favor as to plaintiff Nitido's disparate treatment claim as well.

### III.    Conclusion

Plaintiffs have not made the showing required by Rule 56(d) to justify deferring consideration of defendant's motion for summary judgment.  Moreover, no evidence has been presented on summary judgment suggesting the existence of a disparate impact in defendant's RIF practices which resulted in plaintiffs being laid off.  Finally, neither plaintiff Sidlow nor plaintiff Nitido has presented evidence on summary judgment establishing the existence of a genuine dispute of material fact that must be resolved by a jury with respect to their disparate treatment claims.  A reasonable factfinder could only conclude from the evidence before the court on summary judgment that the decision to lay off plaintiffs, while certainly harmful to them, was not based on an improper age-related reason.

For all of the reasons set forth above:

1.) Plaintiffs' Rule 56(d) motion to defer consideration of defendant's motion for summary judgment and re-open discovery (Doc. No. 66) is denied;

/////

---

[7] Even if Rosenfeld's knowledge of Nitido's claim to have been the functional head of a creative services department could be shown, the impact of such a showing is unclear.  "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered.  We do not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the that [sic] decision." *Green v. Maricopa Cty. Cmty. Coll. Sch. Dist.*, 265 F. Supp. 2d 11110, 1128 (D. Ariz. 2003) (quoting *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)).  Even if he was aware Nitido had served in a similar capacity at prior jobs, defendant still argues Rosenfeld would have made the same lay off decision because Damore had actually served as the creative services director at the two stations which were consolidating, making him better suited for the job in any event.  (*See* Doc. 70 at 12.)  Plaintiff Nitido has presented no evidence aside from his own speculation that this reason was pretextual.

2.) Defendant's motion for summary judgment (Doc. No. 64) is granted as to all of plaintiffs' claims; and

3.) The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

Dated: **July 5, 2016**

*[signature: Dale A. Drozd]*

UNITED STATES DISTRICT JUDGE